IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RAMONA FISCHER, ) | Case No. 1:20-cv-623 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | THOMAS M. PARKER |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

**I.      Introduction**

Plaintiff, Ramona Fischer, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 13. Because the Administrative Law Judge's ("ALJ") failure to strictly comply with the regulations in how she evaluated Fischer's physical therapist's "other source" opinion was harmless error, the Commissioner's final decision denying Fischer's applications for DIB and SSI must be AFFIRMED.

## II. Procedural History

On October 28, 2016, Fischer applied for DIB and SSI. (Tr. 225-38).[1] Fischer alleged that she became disabled on October 17, 2016, due to "1. Thyroid, coped, carpal tunnel, ovarian cancer, bone spurs; 2. thyroid/mutipal both sides; 3. copd; 4. carpal tunnel both sides; 5. Bone spurs in spine; 6. Ovarian cancer stage 1 or 2." (Tr. 225, 232, 262). The Social Security Administration denied Fischer's applications initially and upon reconsideration. (Tr. 74-143). Fischer requested an administrative hearing. (Tr. 176-78). ALJ Penny Loucas heard Fischer's case on October 15, 2018 and denied the claims in a January 29, 2019 decision. (Tr. 9-73). On January 31, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). On March 24, 2020, Fischer filed a complaint to obtain judicial review. ECF Doc. 1.

## III. Medical Evidence and Hearing Testimony

In her written decision, ALJ exhaustively summarized the relevant medical evidence, Fischer's hearing testimony, and the vocational expert's testimony in her decision. *See* (Tr.15-21). Fischer does not challenge the ALJ's summary of the record or submit new evidence. *See generally* ECF Doc. 17; ECF Doc. 19. And independent review does not reveal any material inconsistencies (except as noted below) between the ALJ's summary of the facts and the record before this court. *Compare* (Tr. 15-21), *with* (Tr. 29-73, 324-1155). Thus, the court adopts and incorporates by reference the ALJ's summary of the medical evidence and hearing testimony.[2]

---

[1] The administrative transcript appears in ECF Doc. 12.
[2] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D. Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 7787 (6th Cir. 2017), *aff'd* by 139 S. Ct. 1148 (2019). *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009); *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

On February 23, 2017, Jennifer Diehl, PT, saw Fischer for a functional capacity evaluation upon referral from Courtney Borruso, D.O. (Tr. 394). Fischer told Diehl that she'd had back and neck issues on-and-off for years, was prescribed pain medication, received chiropractic care, and was referred to pain management to begin the following week. (Tr. 394). After evaluating Fischer, Diehl determined that she had "demonstrated the ability to work in the Light to Medium DOT category." (Tr. 394). Diehl explained that Fischer completed most material handling activities to the point of objective physical weakness of fatigue, completed most of the non-material handling activities adequately, and presented moderate physical limitations. (Tr. 394-95). Diehl specifically determined that Fischer could lift from floor to knuckle level up to 37 pounds occasionally and 17.5 pounds frequently. (Tr. 398). Fischer could frequently sit, walk, engage in fine motor activity bilaterally, and operate foot pedals bilaterally. (Tr. 398). She could occasionally stand, climb stairs, bend, reach overhead, kneel, squat, and grasp bilaterally. (Tr. 398). Diehl opined that Fischer should avoid crawling and crouching and that she should be limited to light or medium lifting capacity. (Tr. 395, 398) ("more so leaning to the Light category"). Diehl also determined that Fischer would benefit from physical therapy, which she had not received at the time of her evaluation. (Tr. 395).

## IV. The ALJ's Decision

On January 29, 2019, the ALJ issued a written decision denying Fischer's claims. (Tr. 12-22). In evaluating Fischer's claim, the ALJ expressly stated that she "considered all symptoms" in light of the medical and other evidence and "considered opinion evidence in accordance with the requirements of 20 [C.F.R. §] 404.1527 and 416.927." (Tr. 17-18). The ALJ made the following paraphrased findings relevant to Fischer's argument on judicial review:

> 5. Fischer had the residual functional capacity to perform light work, except she can never climb ladders, ropes, or scaffolds; can frequently crawl; can frequently

3

handle and finger with the bilateral upper extremities; and she must avoid concentrated exposure to respiratory irritants.

Fischer claimed that she could lift no more than 15 pounds at a time, and that she was unable to walk "even half a mile" before needing to stop and rest for 20 to 30 minutes (Exhibits 3E, p.6 [(Tr. 60, 275)]). At her hearing, Fischer alleged that she had difficulty holding on to small objects, and fastening buttons or operating zippers due to cramping and limited dexterity in her hands. [(Tr. 55-57).] She stated that she suffered severe pain in her neck and back that radiated to her feet, and that she was unable to turn her head "completely either to the right or to the left" due to stiffness. [(Tr. 62-63).] She claimed that she could stand for 45 minutes to an hour at a time, and sit for up to 30 minutes at a time before needing to change position. [(Tr. 66).] She claimed that after 45 minutes of sitting, she developed numbness in her legs, and that she needed to lie down or "move around" to alleviate this. [(Tr.62-63).]

On February 23, 2017, the claimant underwent a functional capacity evaluation, at which the administering physical therapist determined that she could occasionally[3] lift up to 17.5 pounds from floor-to-knuckle level, and opined that she was capable of working in the "light to Medium DOT category." (Exhibit 3 F, p. 16, 20 [(Tr. 394, 398)]). The claimant began a course of physical therapy one month later. At her initial assessment, her therapist noted that she had poor posture, and reduced lower extremity strength. (Exhibit 3F, p. 13-14 [(Tr. 391-92)]). However, [pain specialist John W. Hill, MD] once again measured normal strength, motor function, and reflexes, with normal range of motion of the spine, at a return visit on April 25, 2017. (Exhibit 4F, p. 12-13 [(Tr. 414-15)]). At return visits to Dr. Borruso on June 5 and October 10, 2017, the doctor recorded a normal gait. (Exhibit 23F, p.4 [(Tr. 1025)]).

Dr. Borruso conducted a "wellness physical" on March 22, 2018, at which Fischer reported increasing shortness of breath, low back pain, and an unsteady gait, though the doctor once again observed a normal gait and respiration. (Exhibit 1F, p. 4, 7 [(Tr. 327, 330)]). At a return visit on June 20, 2018, [John Lee, DO] now recorded an "altered gait due to leg pain and back pain," and a distressed appearance; he again noted a "slight limp," but no distress and clear lungs, at a follow-up on July 18, 2018. (Exhibit 24F, p. 3, 11 [(Tr. 1029, 1037)]).

Fischer met with Brandon Raudenbush, DO, for an orthopedic evaluation on July 25, 2018. The doctor stated that Fischer's gait was "relatively non-antalgic," and that she had slight weakness of the fingers, but full strength in the lower extremities. A repeat x-ray of the lumbar spine again found mild-to-moderate degenerative changes, which the doctor characterized as "similar to appearance as 2016 x-rays." (Exhibit 26F, p. 4-5 [(Tr. 1068-69)]). Dr. Raudenbush ordered a

---

[3] Here, the ALJ's summary is inconsistent with the record. Diehl said Fischer could lift from floor to knuckle level up to 17.5 pounds *frequently* and up to *37 pounds occasionally*. Compare (Tr. 19), *with* (Tr. 398).

4

> follow-up MRI of the lumbar spine, performed on August 28, 2018, that showed "mild" degenerative changes at all levels. (Exhibit 30F, p. 7-8 [(Tr. 1120-21)]). As of the final recorded examination of Dr. Lee on August 1, 2018, the doctor again recorded normal breathing, no distress, and no neurosensory deficits. (Exhibit 28F, p. 5 [(Tr. 1103)]).
>
> The undersigned gives great weight to the findings of Anne Prosperi, DO, and Timothy Budnik, DO, the State agency medical consultants. Both doctors opined that Fischer could perform light work, with only frequent handling and fingering with the bilateral upper extremities, no climbing of ladders, ropes or scaffolds, frequent crawling, and a need to avoid concentrated exposure to pulmonary irritants. (Exhibit 3A, p. 9-11 [(Tr. 84-86)]; Exhibit 7A, p. 12-14 [(Tr. 119-121)]). This is consistent with the record as a whole, particularly the degree of degeneration confirmed by imaging testing, as well as the limited spinal range of motion and hand weakness observed by the claimant's treaters, but also their repeated findings of her generally normal ability to move about and pain-free appearance. The undersigned therefore adopts the findings of Drs. Prosperi and Budnik directly as the residual functional capacity.
>
> Little weight is given to a statement prepared by Dr. Borruso, in which the doctor opined that Fischer could occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds, consistent with medium work. (Exhibit 16F, p.2-3 [(Tr. 916-17)]). This is inconsistent with the entirety of the evidence. Fischer certainly would be unable to sustain medium work based upon her level of spinal degeneration, and her need to avoid exacerbating her back, neck, and wrist pain.

(Tr. 17-21). Based on her findings and testimony from a vocational expert, the ALJ determined that Fischer had not been under a disability from October 17, 2016, through the date of her decision. (Tr. 21-22).

## V. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind

5

might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant

6

evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a).

### B. Weighing of Physical Therapist Opinion

Fischer argues that the ALJ failed to adequately credit physical therapist Diehl's opinion. ECF Doc. 17 at 5-8. Specifically, Fischer asserts that the ALJ merely recited Diehl's opinion but never assigned a specific weight to the opinion. ECF Doc. 17 at 5-7. Fischer contends that the ALJ also erred by failing to explain why the RFC: (1) said she could crawl frequently when

7

Diehl had indicated that she should avoid crawling altogether; and (2) did not incorporate (or make reference to) other postural limitations from Diehl's opinion. ECF Doc. 17 at 7. Fischer argues that these errors resulted in a decision that was not supported by substantial evidence, and that adoption of Diehl's opinion could have resulted in a more-limited RFC. ECF Doc. 17 at 5-8.

The Commissioner responds that the ALJ was not required to assign any particular weight or deference to Diehl's opinion because, as a physical therapist, she was not an "acceptable medical source" and her opinion did not qualify as a "medical opinion." ECF Doc. 18 at 3. The Commissioner also argues that an ALJ's failure to address limitations in *any* opinion (even that of a treating physician) is not reversible error, so long as the decision as a whole amounts to an "indirect attack" against that opinion. ECF Doc. 18 at 4. Here, the Commissioner asserts that the ALJ provided an indirect attack on Diehl's opinion by noting in the same paragraph that: (1) Fischer did not start physical therapy until a month *after* the assessment; (2) that her initial assessment for physical therapy indicated that she had poor posture and reduced lower extremity strength; and (3) that Dr. Hill had measured normal strength, motor function, and reflexes, with normal range of motion on April 25, 2017. ECF Doc. 18 at 4-5. The Commissioner contends that these statements by the ALJ indicated that – within two months – objective findings by a treating physician contradicted Diehl's opinion. ECF Doc. 18 at 5.

In her reply brief, Fischer argues that the ALJ was required to provide at least some explanation as to how he weighed or considered Diehl's "other source" opinion in evaluating her RFC, but did not. ECF Doc. 19 at 1-3. Fischer asserts that the ALJ's decision in this case is similar to that in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007), in which the Sixth Circuit determined that an ALJ failed to apply proper legal standards by not giving "any

8

degree of specific consideration" to an "other source" opinion's functional assessments. ECF Doc. 19 at 3. Further, Fischer contends that the Commissioner's argument that the ALJ was not required to weigh Diehl's opinion is an improper *ad hoc* rationalization. ECF Doc. 19 at 3-4. Finally, Fischer argues that the ALJ did not provide an "indirect attack" on Diehl's opinion, but simply failed to give *any* reason for crediting or not crediting the opinion. ECF Doc. 19 at 4-5.

At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives. 20 C.F.R. §§ 404.1527(c), 416.927(c).[4] In doing so, the ALJ must consider: (1) the examining relationship; (2) the degree to which supporting explanations consider pertinent evidence; (3) the opinion's consistency with the record as a whole; (4) the source's specialization related to the medical issues discussed; and (5) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). But an opinion qualifies as a "medical opinion" only when it is issued by "acceptable medical source." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). And a physical therapist is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1502(a)(1)-(8), 416.902(a)(1)-(8).

Social Security Ruling 06-3p provides that "other source" opinions (such as those from a physical therapist) are nevertheless "important" and "may provide insight to the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 SSR LEXIS 5, at *4-5 (2006). Thus, an ALJ must still evaluate "other source" opinions using the same factors used to evaluate medical opinions and explain the reasons why she treated the "other source" opinion the way she did. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th

---

[4] The Social Security Administration amended the regulations that provide the procedure for evaluating medical evidence for claims filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c (replacing 20 C.F.R. §§ 404.1527, 416.927); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017); *Recission of Social Security Rulings 96-2p, 96-5p, and 06-3p*, 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Fischer filed her claims before March 27, 2017, the previous regulations govern this case.

Cir. 2007). Such an explanation must be sufficient to allow the claimant and a subsequent reviewer to understand the ALJ's reasoning. *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249 (6th Cir. 2015); SSR 06-3p, 2006 SSR LEXIS 5, at *15-16. The failure to provide such an explanation indicates "'a lack of substantial evidence, even whe[n] the conclusion of the ALJ may be justified based upon the record.'" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers*, 486 F.3d at 243).

The failure to strictly comply with these legal procedures may be harmless when: (1) the opinion is so patently deficient that it could not be credited; (2) the opinion was actually adopted; or (3) the ALJ met the goal of these procedural safeguards, despite failing to strictly comply with the regulations. *Friend*, 375 F. App'x at 551 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). This last circumstance may take the form of an "indirect attack," when the ALJ's analysis of other opinions in the record or of the claimant's ailments calls to question the supportability of the opinion or its consistency with other evidence. *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)). The key question in determining whether an "indirect attack" satisfies the spirit of the regulatory framework is whether the analysis as a whole permits the claimant and reviewing court to glean a "clear understanding" of the reasons for the reasons the limitations in an opinion were not adopted. *Id.*

The court agrees with Fischer that the ALJ did not strictly comply with the regulations in how she evaluated Diehl's "other source opinion." 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers*, 486 F.3d at 241. The ALJ did not explicitly state what weight she gave Diehl's opinion or state whether she rejected or adopted the opinion. *See* (Tr. 19). Fischer correctly asserts that the ALJ failed to discuss any of the postural limitations in Diehl's opinion, or discuss parts of other

10

medical opinions that conflicted with those particular limitations in Diehl's opinion. *See* (Tr. 17-21). This is especially perplexing when the ALJ specifically stated (in explaining why she discounted Dr. Borruso's opinion) that Fischer was incapable of medium work due to spinal degeneration and her need to avoid exacerbating her back, neck, and wrist pain. (Tr. 20-21). Such a statement could easily have led Fischer (and any other person reading the decision) to reasonably expect the ALJ to integrate postural limitations similar to those included in Diehl's opinion. *Compare* (Tr. 20-21, 398), *with* (Tr. 19). And the lack of any explanation that addressed this apparent inconsistency between the postural limitations in Diehl's opinion, the ALJ's implication that some postural limitations were required to account for Fischer's spinal issues, and the ALJ's ultimate RFC finding, easily requires the conclusion that the ALJ failed to provide the kind of explanation contemplated in SSR 06-3p. *Friend*, 375 F. App'x at 551; *Noto*, 632 F. App'x at 249; SSR 06-3p, 2006 SSR LEXIS 5, at *15-16.

Nevertheless, the ALJ's failure to provide such an explanation was harmless for two reasons. First, the ALJ's failure to include an explanation was harmless because the ALJ adopted part of Diehl's opinion. Here, the ALJ's ultimate RFC finding is *consistent* with Diehl's opinion that Fischer was limited to a range of light work. *Compare* (Tr. 17), *with* (Tr. 19, 395). Thus, there was no need for the ALJ to explain any inconsistency between those select findings in Diehl's opinion and her ultimate RFC finding. *Friend*, 375 F. App'x at 551; *Wilson*, 378 F.3d at 547.

Second, the ALJ's decision – read as a whole – amounted to an indirect attack on the remaining portions of Diehl's opinion and sufficiently satisfied the procedural safeguards of the regulations notwithstanding its failure to strictly comply with them. *Friend*, 375 F. App'x at 551; *Wilson*, 378 F.3d at 547; *Nelson*, 195 F. App'x at 470; *Hall*, 148 F. App'x at 464.

11

Within the same paragraph in which the ALJ discussed Diehl's opinion, the ALJ specifically noted that: (1) Fischer did not begin physical therapy until a month *after* Diehl's initial assessment; and (2) subsequent examinations by Dr. Hill and Dr. Borruso revealed that she had normal strength, normal motor function, normal reflexes, normal range of motion of the spine, and a normal gait. (Tr. 19, 391-92, 414-15, 1025). The ALJ also noted that Dr. Raudenbush found that Fischer had: (1) a non-antalgic gait and full strength in her lower extremities during a July 2018 examination; and (2) only mild-to-moderate degenerative changes in her lumbar spine when comparing 2016 diagnostic imaging with 2018 imaging. (Tr. 20, 1068-69, 1120-21).

Moreover, the ALJ explained that she gave great weight to Dr. Prosperi's and Dr. Budnik's opinions and expressly *adopted* those opinions as her RFC finding. (Tr. 20). This is particularly important because – although the ALJ did not recite each postural finding in Dr. Prosperi's and Dr. Budnik's opinions – those opinions found that Fischer was *unlimited* in climbing stairs, bending, reaching over head, kneeling, crouching, and operating foot controls. (Tr. 84, 119-120). The ALJ's express, unqualified adoption of Dr. Propseri's and Dr. Budnik's opinions creates, at the very least, the implication that she gave great weight to and adopted those opinions as consistent with other evidence in the record. (Tr. 20). And because these postural limitations directly conflicted with those in Diehl's opinion[5], the adoption of Dr. Prosperi's and Dr. Budnik's postural findings as consistent with the medical evidence is *by necessity* a rejection

---

[5] Dr. Prosperi and Dr. Budnik did not provide an opinion directly conflicting with Diehl's opinion that Fischer had a limited ability to squat. *Compare* (Tr. 84, 119-20), *with* (Tr. 398). Nevertheless, their opinions *were* inconsistent with such a finding because they noted that Fischer had normal range of motion in her spine. (Tr. 84, 119-20). Additionally, the ALJ's recitation of Dr. Hill's, Dr. Borruso's, and Dr. Raudenbush's findings that Fischer had normal strength, normal range of motion, and only mild to moderate spine degeneration is sufficient to indirectly attack Diehl's opinion that Fischer had a limited ability to squat. (Tr. 19-20, 391-92, 398, 414-15, 10251068-69, 1120-21); *Friend*, 375 F. App'x at 551; *Wilson*, 378 F.3d at 547; *Nelson*, 195 F. App'x at 470; *Hall*, 148 F. App'x at 464.

12

of Diehl's postural limitation opinions as inconsistent with other evidence in the record. *Compare* (Tr. 84, 119-20), *with* (Tr. 398). Thus, the ALJ's written decision – read as a whole – amounted to an indirect attack on the postural limitations in Diehl's opinion sufficient for a reviewing court to clearly understand why the ALJ did not adopt those limitations. *Friend*, 375 F. App'x at 551; *Wilson*, 378 F.3d at 547; *Nelson*, 195 F. App'x at 470; *Hall*, 148 F. App'x at 464.

Finally, even if the court did not conclude that the ALJ's failure to specifically reject each portion of Diehl's opinion was harmless for the reasons stated above, Fischer would still not have met her burden to show that any error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, at 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Here, Fischer has provided no argument – whether in her initial or reply briefs – that the ALJ's ultimate finding that she was not disabled would have been any different had the ALJ provided a more detailed explanation for rejecting Diehl's opinion. *See generally* ECF Doc. 17; ECF Doc. 19; *Rabbers*, 582 F.3d at 655-56 (holding that the ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless); *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (the court does not remand when doing so would be an idle and useless formality); *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969) (noting that in such instances courts are not required to "convert judicial review of agency action into a ping-pong game.") And, although she says that the RFC *might* have been different had the ALJ adopted Diehl's opinion, Fischer has not argued that: (1) the Medical-Vocational Guidelines *would have* directed a "disabled" finding if Diehl's opinion had been adopted as the RFC; or that (2) the vocational expert would have testified that Fischer could not perform any work. *See generally*

13

ECF Doc. 17; ECF Doc. 19. Accordingly, any such argument is waived. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) (affirming a district court's finding that a claimant waived arguments that he did not raise in his merits brief).

Because the ALJ's written decision adopted Diehl's opinion in part and provided an indirect attack on the portions of Diehl's opinion that the ALJ did not adopt, the ALJ's failure to provide a more-detailed explanation strictly complying with the regulations governing the treatment of "other source" opinions was harmless error and provides no basis for remand. *Friend*, 375 F. App'x at 551; *Wilson*, 378 F.3d at 547; *Rabbers*, 582 F.3d at 655-56.

### VI.  Conclusion

Because the ALJ's failure to apply proper legal standards in evaluating Diehl's "other source" opinion was harmless, the Commissioner's final decision denying Fischer's applications for DIB and SSI must be, and hereby is, AFIRMED.

**IT IS SO ORDERED.**

Dated: March 2, 2021

Thomas M. Parker
United States Magistrate Judge